# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4187

_____

| | | |
|---|---|---|
| Almeter Overton, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Kenneth S. Apfel, Commissioner of | * | |
| Social Security, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: November 3, 2000
Filed: November 28, 2000

_____

Before McMILLIAN, BOWMAN, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

PER CURIAM.

Almeter Overton appeals the District Court's[1] order affirming the
Commissioner's decision to deny her application for disability insurance benefits.

_____

[1]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the
Eastern District of Arkansas, to whom the case was referred for final disposition by
consent of the parties pursuant to 28 U.S.C. § 636(c).

Overton alleged disability since October 1991[2] from a bad back, leg numbness, nerves, and insomnia. After a hearing, an administrative law judge (ALJ) concluded that she had the residual functional capacity (RFC) to perform the full range of light and sedentary work, as she had no nonexertional impairments, and could thus perform her past relevant work (PRW) as a sewing-machine operator (classified as light work in the Dictionary of Occupational Titles); and alternatively, based on the Medical-Vocational Guidelines, she was not disabled. In an attached psychiatric review technique form, the ALJ found that her mental impairments were not severe.

On appeal, Overton argues that the ALJ erred in finding her capable of performing her PRW or light work, as she consistently complained of back pain, her MRI showed spinal-canal narrowing, and the opinion of her treating physician, Leon Waddy, M.D., as to her RFC was given no weight. Overton also argues that the ALJ improperly relied on the observations of the consulting psychologist, Dr. Charles Spellman, and incorrectly concluded that her mental impairments were not severe. After a thorough review of the record, we conclude that the ALJ's findings are supported by substantial evidence on the record as a whole. See Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000) (standard of review).

Overton's characterization of her reports of back pain is not entirely accurate, because, as the ALJ noted, there were significant periods of time—December 1991 to July 1992, and July 1993 to October 1994—after the alleged onset date of October 1991 during which she sought no treatment for back pain. See Siemers v. Shalala, 47 F.3d 299, 301-02 (8th Cir. 1995) (finding substantial evidence, based in part on claimant's failure to seek regular medical treatment, to support ALJ's decision to discredit complaints of disabling pain). The April 1991 MRI report also supported the ALJ's determination that she was able to do light work, as it indicated no nerve-root

_____

[2]Overton had applied for disability insurance benefits in August 1991, and was granted a closed period of disability from May 1989 to June 1991.

compression; additionally, Dr. Collins's later neurological findings were normal. Although the ALJ did not reference Dr. Waddy's July 1992 RFC opinion, it was conclusory (as Overton admits) and it was based on an unexplained and unsupported diagnosis of "lumbar disc syndrome." See Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (affirming ALJ's assessment of treating physician's opinion as unsupported by objective medical tests or diagnostic data and not conclusive in disability determination; weight given to treating physician's opinion is limited if it is only conclusory statement). Thus, we conclude that the ALJ's RFC findings were based on the medical records (which he summarized), observations of the treating and consulting physicians and others, including Overton's chiropractor, and Overton's own testimony, as required. See Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

Contrary to Overton's assertion, the ALJ did not base his findings as to her alleged depression and anxiety solely on Dr. Spellman's observations; he also relied on the minimal number of notations in her medical records related to mental problems, the lack of abnormalities assessed by Dr. Collins in his mental-status examination, and the absence of treatment by mental health professionals or prescriptions for psychiatric medications. Accordingly, his conclusion that Overton's depression and anxiety were not severe is supported by substantial evidence. See Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (holding substantial evidence supported ALJ's conclusion that claimant did not have severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes).

As to the IQ test results obtained during Dr. Spellman's evaluation of Overton, Dr. Spellman opined they were not indicative of her true level of intellectual functioning based upon the way she handled herself and his suspicion that she deliberately gave incorrect answers. Further, the scores were the product of a one-time assessment; her medical records do not reflect a suspected intellectual impairment; and she at one time drove, cooked, and performed household tasks. See Clark v. Apfel, 141 F.3d 1253,

1255-56 (8th Cir. 1998) (discussing factors weighing against validity of IQ test scores). Finally, Overton did not raise impaired intellectual functioning as a basis for disability in her applications or at the hearing, see Sullins v. Shalala, 25 F.3d 601, 604 (8th Cir. 1994), cert. denied, 513 U.S. 1076 (1995), and she worked for a number of years with the same cognitive abilities, see Roberts v. Apfel, 222 F.3d 466, 468-69 (8th Cir. 2000) (concluding ALJ properly supported his determination as to effect of claimant's borderline intellectual functioning and reading deficiency by noting, inter alia, claimant's ability to work for years with same cognitive abilities).

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.